## Pharris v. Commonwealth.

(Decided March 2, 1923.)

# Appeal from Cumberland Circuit Court.

1. Homicide—Evidence Insufficient to Justify Submission of Question of Conspiracy.—On a trial for murder, evidence held insufficient to justify the court in submitting the question of conspiracy between defendant and others to kill deceased.

2. Criminal Law—Conspiracy Cannot be Established by Suspicion or by Showing Natural or Reasonable Relations and Associations.—Conspiracy may be shown by circumstances from which a jury may infer its existence, and, when the circumstances reasonably lead to that inference, it is for the jury to determine whether it did or did not exist, but a conspiracy cannot be established by suspicion, and relations and associations between the parties which are natural and reasonable according to their habits and modes of life do not constitute evidence of conspiracy.

3. Criminal Law—Statements of Alleged Conspirators in Defendant's Absence Inadmissible, When Conspiracy Not Established.—Incriminating statements made by defendant's alleged co-conspirators, act in his presence, were inadmissible, where there was not sufficient evidence to establish the conspiracy.

4. Criminal Law—Statements in Defendant's Presence With His Accompanying Action or Speech Held Admissible.—Statements made by others in defendant's presence and hearing, tending to connect him with the crime charged, with his accompanying action or speech, were competent.

5. Criminal Law—Acts and Statements of Alleged Conspirators Admissible to Establish Conspiracy.—Evidence of acts and statements of defendant's alleged co-conspirators before the homicide charged were properly admitted for the purpose of showing the existence of a conspiracy, but, where such evidence as a whole was not sufficient to show the existence of a conspiracy, it should have been excluded at the conclusion of the evidence.

6. Criminal Law—Case Submitted to Jury When There are Facts from Which Guilt Can be Deduced.—Where there are any facts introduced in evidence from which guilt of accused can reasonably be deduced, the case should be submitted to the jury under appropriate instructions, though a conviction based on the evidence would be regarded as flagrantly against it.

7. Homicide—Evidence Held Sufficient to Make Question for Jury.—Evidence on a trial for murder held sufficient to authorize submission of the case to the jury.

8. Homicide—Finding of Guilt Under Instruction on Theory of Conspiracy Not Tantamount to Acquittal on Theory that Defendant Alone was Concerned in the Crime.—Where the charge submitted two hypotheses of guilt, one on the theory of conspiracy, and the other independent of conspiracy, a conviction based on the con-

spiracy instruction was not tantamount to an acquittal under the instruction authorizing a conviction, if defendant alone was concerned in the killing, there being no sufficient evidence of conspiracy.

P. SANDIDGE for appellant.

CHAS. I. DAWSON, Attorney General, and CHAS. A. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

Otis Pharris, Louisa Pharris, Louise Booher, Claude Willen and Grady Linder were jointly indicted in the Cumberland circuit court for the murder of Granville Linder. On the separate trial of Otis Pharris he was convicted and his punishment fixed at confinement in the penitentiary for life. He contends on this appeal that the court erred in instructing the jury, in admitting incompetent evidence, and in refusing to instruct the jury to return a verdict of not guilty at the conclusion of the Commonwealth's evidence.

The decedent was the husband of Grady Linder, the stepfather of Claude Willen, the son-in-law of Louise Booher, and a brother-in-law of appellant, Otis Pharris. Louisa Pharris is a twin sister of Louisa Booher. Linder was killed on a Tuesday in September, 1921, presumably about 11 o'clock in the morning, while engaged in pulling the fodder from some standing corn in a field near his residence. He was found late that evening by some neighbors where he had fallen on receiving a load of shot discharged at the hands of an assassin, who had concealed himself in the weeds a few steps from the place where deceased was working. At the place where the assassin had been concealed there were found two shotgun shells, one of which had been discharged. There were also found near that place the tracks of a man, apparently made by a number seven or eight shoe, some barefoot tracks, and the indentation of what seemed to be the heel of a woman's shoe. These constituted the only clues found at the point of the assassination.

The deceased was living on a farm that belonged to his mother-in-law or her sister. In the early part of the summer some trouble had occurred between Louise Booher and Linder, resulting in the former causing a warrant to be issued for his arrest. Before the trial one of the neighbors undertook to settle the differences between the

two, but the Booher woman was unwilling to settle unless Linder would move off the place at once. The cause of the difficulty and the merits of their respective claims out of which it arose are not disclosed in this record. At any rate the parties were unable to compose their differences and the case proceeded to a trial, in which Linder was fined $2.50. Thereafter there seems to have been no further breach until in the autumn, when Linder started to pull the fodder from some corn that he had cultivated. That fact was reported to Louise Booher and Louisa Pharris, and, according to the proof, they both became indignant, not because they wanted the fodder, but, as the witness who testified to their indignation said, because they thought the corn was not sufficiently mature to pull the blades without damaging it. The same witness said that one of these women threatened to go to the decedent's place with two men who were living at her house, and take the fodder by force. It is the theory of the Commonwealth that the trouble occurring between Louise Booher and decedent in the early part of the summer engendered such bitterness on the part of those who were indicted as to culminate in a conspiracy to kill Linder, and that the murder was committed pursuant thereto.

In addition to the threat just referred to, the Commonwealth introduced evidence of conversations occurring between Louisa Pharris, Louise Booher and appellant, in which they manifested indignation at the manner in which Linder had treated them. There was also testimony showing that Otis Pharris was seen two or three times, only a few days before the killing, between the place where he lived and the place where the deceased lived, the two places being about five miles apart. One witness testified that appellant said on one occasion, perhaps shortly after the trial of the case in which the deceased was fined, that deceased ought to be killed, and it appears that on the day following the assassination appellant visited one of his neighbors for the purpose of finding out whether the neighbor would testify to having seen him on the previous day. This neighbor said that Pharris offered him any amount of money if he would testify that he had seen Pharris at his home on the Tuesday that the killing occurred. Claude Willen was then staying with his grandmother, and the evidence shows that all of those indicted, except appellant, were at home on the day that the killing occurred. It appears from the testimony of his codefendants that appellant was also

at home that morning, but one witness who was employed there testified that appellant was not at home until about noon. The proof shows that several months before the homicide Louise Booher had bought some loaded shells from a merchant in the neighborhood; that the shells were for twenty and sixteen gauge guns. She admitted buying the shells but in her testimony accounted for their use. Pharris' shotgun was introduced in evidence, and, while it is a sixteen gauge gun, it was shown that a twenty gauge shell could be fired from it. Some effort was made to prove that unusual marks were made on a twenty gauge shell, when fired from it, similar to those on the discharged shell found near the point where the assassination occurred.

There are other circumstances introduced in the evidence which, according to the Commonwealth's claim, tend to establish a conspiracy. They are, however, so insignificant that we deem it unnecessary to refer to them in this opinion. Two hypotheses of guilt were included in the instructions, the first relating to the guilt of accused independent of a conspiracy, and the second authorizing a conviction if the murder was committed pursuant to a conspiracy formed by appellant and those indicted with him. The conviction was based on the conspiratory instruction. It is earnestly insisted that the giving of that instruction was error.

From a careful examination of the record we have been unable to find any evidence that could be said to indicate that Claude Willen or Grady Linder entered into a conspiracy to murder the deceased. Moreover, there is no circumstance or fact disclosed in the record from which it could be inferred that Louisa Pharris was a party to any such conspiracy. Louise Booher did buy some shells several months before the killing, but, as we have remarked, she accounted on the trial for the disposition of them, and, aside from that fact, her act in purchasing the shells is as consistent with non-participance in a conspiracy to murder deceased as it is with the theory that she bought them for the purpose of contributing to that occurrence. Eliminating that circumstance, there seems to be nothing left upon which the Commonwealth can sustain its contention as to her except that she had some difficulty with Linder in the early part of the summer and undoubtedly spoke harshly of him, and also indicated to one witness, at the time Linder started to pull the fodder, that she expected to take some men up to Lin-

der's place and take the fodder by force. No evidence was introduced connecting her, or for that matter Pharris, with the footprints that were· found at the place where the assassin awaited his opportunity to kill Linder. At most, therefore, there seem to be only a few incidents in the record which would lead to a suspicion that she participated in the alleged conspiracy. Is this suspicion sufficient evidence of the existence of a conspiracy to take the case to the jury? We think not, even under the well established rule that slight evidence of a conspiracy will sustain a finding of its existence. It has been repeatedly held by this court that a conspiracy may be shown by circumstances from which a jury may infer its existence, and that when the circumstances are reasonably inducive of that inference it is for the jury to determine whether it did or did not exist. Gambrell v. Commonwealth, 130 Ky. 513; Pace v. Commonwealth, 170 Ky. 561; Morgan v. Commonwealth, 188 Ky. 458; Anderson v. Commonwealth, 196 Ky. 30. It is equally well settled under the authorities just cited that "conspiracies can not be established by a mere suspicion," and that relationships and associations between the parties which are natural and reasonable according to their habits and modes ·of life do not constitute evidence of a conspiracy. With these rules in mind, we have examined the evidence for the Commonwealth, and, drawing from it every incriminating inference that a reasonable interpretation will permit, we are yet unable to arrive at the conclusion that there was sufficient evidence of a conspiracy to submit the question to a jury. In that view of its effect it is our duty to hold that the instruction on conspiracy should not have been given.

From the conclusion just stated it follows that the trial court erred in refusing to exclude from the consideration of the jury the incriminating statements of appellant's alleged co-conspirators, not made in his presence. Any statement made by them in his presence and hearing that tended to connect him with the crime, with his accompanying action or speech, would be competent, but the statements not made in his presence are inadmissible. It may be further observed that the court properly admitted evidence of the acts of, and statements made by, appellant's co-conspirators before the killing of Linder, for the purpose of showing the existence of a conspiracy, but this testimony the court should have excluded at the conclusion of all the evidence, on the

ground that it was not sufficient to show the existence of a conspiracy, and was therefore incompetent. Anderson v. Commonwealth, *supra*. Had these statements, when considered with other evidence, been sufficient to warrant the submission of the question of conspiracy to the jury, it would have been proper to overrule the motion to exclude them from the evidence. But since, as we have concluded, they were not sufficient to establish the conspiracy, they should have been excluded from the consideration of the jury at the conclusion of the Commonwealth's evidence.

It is finally contended for appellant that his motion for a peremptory instruction should have been sustained. It is the rule that where there are any facts introduced in evidence from which the guilt of the accused can reasonably be deduced, the case should be submitted to the jury under appropriate instructions, although a conviction based on the evidence would be regarded as flagrantly against it. The finding of a discharged shell at the place of the assassination which could have been fired from appellant's shotgun, the evidence to the effect that he had been seen on two or three occasions immediately preceding the killing between his home and the deceased's place, and that he had offered to bribe a neighbor to testify that he was at home on the day that the killing occurred, and the slight similarity between the indentation on the discharged shell found at the scene of the killing and the indentation made on the same kind of shell fired from his gun, in connection with his statement on a former occasion that the deceased ought to be killed, tended to establish the Commonwealth's case and authorized its submission to the jury. Appellant, with others, was charged in the indictment with the murder, and, although the jury found him guilty under an unwarranted instruction, the finding under that instruction is not tantamount to an acquittal under the instruction by which the jury was authorized to convict him if it believed that he alone was concerned in the killing. On another trial, if the evidence be the same as on the last, the instruction on conspiracy will not be given, but the case will be submitted to the jury on the charge that appellant alone committed the murder.

The judgment is reversed.