## Crawford v. Commonwealth.

(Decided January 19, 1932.)

LAWRENCE & CARTER and A. J. OLIVER for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

Jointly indicted in the Monroe circuit court with Kim Crawford, Creed Crawford, John O. Scott, Rice Short, and Sam Riley for the murder of Jessie Scott, Porter Crawford on a separate trial was found guilty and his punishment fixed at imprisonment for life. He has appealed.

The indictment charges that these parties committed the murder pursuant to and in the furtherance of a conspiracy into which they had entered. In separate counts, each of the defendants, other than Kim Crawford, is charged with shooting and killing Jessie Scott in pursuance of the conspiracy, and the other defendants, excepting Kim Crawford, with aiding and abetting therein.

For a reversal it is argued by counsel for appellant: (1) That the verdict is flagrantly against the evidence and is the result of passion and prejudice upon the part of the jury; (2) that the court admitted incompetent evidence on behalf of the commonwealth over appellant's objection; (3) that the instructions to the jury were erroneous.

The evidence shows that in the fall of 1930 Jessie Scott while engaged in cutting tops in his cornfield was killed by shots fired from the opposite side of a hollow or ravine from that on which he was working. Bethel Scott, a son of deceased, who was also at work in the field, testified that after two shots had been fired he ran to his father; that after two more shots were fired he fell to the ground feigning injury, whereupon the assailant ran away; that after the firing of the first two shots, he looked across the hollow and saw the man who

was doing the shooting clad in a woman's black dress and standing on a log. He stated that he favored appellant, but also admitted that he favored Sam Riley and John O. Scott.

There is evidence that the man who did the shooting was behind a log barricade, and that further up the hillside, where an opening had been made to afford a view of the place where Mr. Scott and his son were at work, there was another barricade made of brush.

Sam Riley was introduced as a witness by the commonwealth, and testified that on the morning of the killing he saw appellant about a quarter of a mile from the scene of the tragedy carrying a stick or gun. Two other witnesses testified that they saw appellant on the day of the killing going toward his home and that he was carrying a stick or gun in his hand.

A gun which officers procured from the residence of Kim Crawford or from some building on his farm was introduced in evidence along with some bullets that were dug out of the ground where Scott fell. Lem J. Howell of Warren county, and Seth Waird of the Crime Detective Laboratory of Northwestern University, Chicago, testified that the bullets found at the scene of the tragedy were fired from the gun introduced in evidence. Some question is made that these witnesses, or at least Howell, did not qualify as a ballistic expert and that the gun and bullets introduced were not properly identified or shown to be in the same condition as when found, and further that there was no evidence connecting appellant with this gun or the bullets.

While the Assistant Attorney General who prepared the brief for the commonwealth insists that there is ample evidence to show a conspiracy, he sums up the evidence so indicating, in substance, as follows:

Kim Crawford is known in the neighborhood as the "old man" and as the leader of the crowd which entertained ill feeling toward deceased. He is a brother of appellant, brother-in-law of John O. Scott, father of Creed Crawford, and grandfather of Sam Riley's wife.

In August, prior to the killing, an indictment was returned against Jessie Scott for detaining a woman against her will, the prosecuting witness being a sister of Sam Riley.

Appellant and some of his codefendants, including his brother Kim Crawford, were or had been engaged in

the manufacture of moonshine liquor. In fact, it appears from the record that this was a thriving industry in the Kettle creek community where the tragedy occurred. Deceased was active in attempting to suppress violation of the laws, or, at least, in reporting the violators thereof and in accompanying officers on raids. At the time of the killing an indictment was pending against appellant charging him with violation of liquor laws and the name of deceased appeared on the indictment as a witness. After the killing, Porter Crawford stated that it was the best thing that had happened in the country and requested witnesses not to swear against him and send him off from his wife and children.

About two weeks before Scott was slain Kim Crawford was heard to say that he ought to be "knocked off" but as yet the right man had not been picked to do it. He also stated that he knew Jessie Scott was out on a raid the day before the killing and that he asked witnesses to warn whisky people of that fact; that on two occasions Scott had given information to officers relative to violations of liquor laws. It is further shown that after the indictment was returned, Kim Crawford asked a witness if he and his wife could not pull Porter Crawford out of this trouble. In September, Kim Crawford, while accompanied by John O. Scott, stated in the presence of witnesses that they could not make any more liquor and that Jessie Scott should be made away with.

On several occasions Rice Short talked about getting rid of Scott and advised killing him. A conversation between Rice Short and Sam Riley was overheard in which $250 was mentioned, and Short said that the "old man" was behind it, and if Sam Riley didn't do it, Porter Crawford would. In August, Rice Short was apprehended in a raid upon a still under a warrant procured by affidavit of Jessie Scott.

Our examination of the record discloses that counsel for the commonwealth have summed up all evidence that would in any way tend to disclose the existence of a conspiracy. When carefully considered, however, this evidence simply shows that appellant was or had been engaged in the manufacture or barter of intoxicating liquor; that he is related by blood or marriage to a number of his codefendants who likewise were given to the violation of the liquor laws; that deceased had been active in reporting violations in the community, had in-

curred their ill will, and thereby afforded a motive for killing him.

The fact that appellant was jointly indicted with a number of his relatives and with other persons, and that he in common with them may have had a motive in murdering Scott, is not sufficient to establish a conspiracy to commit the murder. The record is silent as to any act or statement on the part of appellant indicating that he entered into such a conspiracy.

In attempting to develop a conspiracy, the commonwealth must, perforce, be given great latitude; and if as a whole the evidence is sufficient to establish prima facie the existence of a conspiracy, evidence of acts and declarations of alleged coconspirators is competent and should be permitted to go to the jury, under proper instruction. But in the absence of proof tending to establish such prima facie case, accused should not be held responsible for acts and declarations of his codefendants out of his presence and proof of such acts and declarations should be excluded from the jury at the close of the evidence and no instruction on that question should be given. Commonwealth v. Ellis, 133 Ky. 625, 118 S. W. 973; Pharris v. Commonwealth, 198 Ky. 51, 248 S. W. 230; Sain v. Commonwealth, 193 Ky. 215, 235 S. W. 368; Shelby v. Commonwealth, 91 Ky. 563, 15 S. W. 461, 13 Ky. Law Rep. 178.

There is evidence of statements of the alleged coconspirators of appellant which might tend to indicate a purpose or desire to make away with Jessie Scott, and that they or some of them had in mind to use appellant in the furtherance of the plan or design; but there is no evidence that accused knew of such statements or that he entered into any plan or design having as its ultimate purpose this murder. We have reached the conclusion that there was not sufficient evidence of a conspiracy to authorized the submission of that question to the jury and at the close of the evidence proof as to acts and declarations of appellant's codefendants out of his presence should have been excluded under proper admonition.

It appears that the witnesses Howell and Waird qualified as experts on firearms, or as "ballistic experts" in the sense in which that term is used in the record. However, in the absence of proof to show a conspiracy or to connect appellant in any way with the possession, use, or control of the gun and bullets, their evidence relative

thereto is incompetent as to him. All other questions are reserved.

For reasons indicated the judgment is reversed, and the cause remanded for a new trial consistent with this opinion.