# Crawford v. Commonwealth.

(Decided February 19, 1932.)

LAWRENCE & CARTER for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMISSIONER— Reversing.

Kim Crawford, Porter Crawford, his brother, Creed Crawford, his son, John O. Scott, his brother-in-law, Wright Short, his son-in-law, and Sam Riley, the husband of his granddaughter, were jointly indicted in the Monroe circuit court, charged with the murder of Jesse Scott in pursuance of a conspiracy between them to kill him. Kim Crawford was placed on trial. He was found

guilty and his punishment fixed at life imprisonment. He appeals.

In October, 1930, Jesse Scott was cutting tops in his cornfield with his son Bethel Scott, and was killed by shots fired from a hill opposite him. When Jesse Scott was shot, he called to his son, who ran to him, and two shots were then fired at the son, who fell to the ground to shield himself and was not hit. He testified that the man who was doing the shooting then came out in view on the hillside, clad in a black dress, and that it was either Sam Riley, John O. Scott, or Porter Crawford, he could not tell which. Jesse Scott had taken an active part aiding the prohibition officers in their search for illicit stills. Some months before this Kim Crawford had been arrested under a search conducted by him and the case stood for trial. Creed Crawford was then operating an illicit still, not far from his grandfather's, and there were other like stills on this creek. News had come to the neighborhood that a raid was to be made the next day, directed by Jesse Scott. Sam Riley had rented some land from Jesse Scott. Scott, without the consent of Riley, was cutting the tops on this land at the time he was shot. The person who did the shooting was hidden behind the bushes on the hillside, but he had cut away enough of the bushes so that he could see through to shoot Scott. Some feet above this, on the hillside, there was another place where the bushes had been cut away to give a view for a person standing by a tree. The commonwealth introduced on the trial as its witness the defendant Sam Riley, and he testified to the following conversation between him and Kim Crawford on Monday before Scott was killed on Wednesday:

"He said, 'when did you see Jess Scott?' I said that I saw him last Friday. He said 'Where is he today?' and I said 'I don't know.' He said 'Ain't he over there at your house cuttin' tops?' I said 'I don't know.' He said 'He tore hell out of Zeketown the other day, didn't he?' I said 'I don't know.' He said 'He don't never tell you nothing that way, does he?' I says 'No.' He says 'How much would you take to kill him?' I says, 'I don't want to do nothing like that.' He said, 'I will tell you what I will do, I will give you $250.00 and furnish the gun if you will go over there and kill him.' I said 'I don't want to do nothing like that.' He said

'You ain't got the nerve, have you?' I said I don't want to do it. He said 'By God there is men that has got the nerve.' "

Ed Scott testified that not very long before the killing this occurred between him and Kim Crawford in Glasgow:

"He never said very much. Just called me off the street and asked me if I knowed Jess Scott was going to get killed and I asked him why and he said 'He is reporting stills. He is going to get killed and ought to be killed,' was about the substance of it."

Jeff Scott testified to this conversation with Kim Crawford in Glasgow, not long before the killing:

"He said he had had the whisky business all torn up; that whisky was scarce and he was going to get killed.

"Q. Any other thing he said about him, if so tell the jury? A. He said he wouldn't be a live man in six weeks, that he was going to be killed.

"Q. How long after that was it until you heard of his death? A. A short time. I don't remember how long, but a short time."

William Poindexter testified to this conversation with Kim Crawford about a month before the killing:

"Well Mr. Crawford and John Oliver Scott came along in a car where me and the road hands were working the road and stopped his car and said he wanted to speak to me. We walked off something like fifteen or twenty steps and he wanted to know what in the hell we was going to do with Jess Scott. I said, 'I don't know, Kim; why?' He said 'By God we can't make no more liquor as long as he runs the ridge.' I said 'I don't know what we will do with him.' He said 'By God he will have to be made away with damn quick.' I said 'I can't have anything to say about that.' He said, 'By God you can hold your tongue can't you?' I said, 'yes,' and he got in his car and went on."

Ike Prewitt testified that on Saturday before Scott was killed on Wednesday, this occurred:

"Kim asked me when I had seen Sam Riley and I told him 'I have not seen him for a few days.' He

said, 'Him and Jess Scott has fell out.' I said, 'I understand they had.' He said 'Over their crop?' I said 'yes.' He said 'What are you going to do tomorrow?' I said, 'I don't know.' He said while Sam was mad he was mean enough to kill Jess Scott and wanted me to come up and go with John Oliver over there and agg Sam up and get him to get Jess down in the yard and kill him.''

Buck Monday testified that on Friday, after the killing, this occurred between him and Kim Crawford:

"A.  He called me out the back door and he says to me, 'Did you ever see me pass up and down the road by your house or anywhere with a gun?' I told him, 'No, sir.'
"Q.  Then what did he say? A. He said, 'We have all got to hang together.' "

An officer went to the house of Kim Crawford the day after the killing and Crawford gave him his rifle. The officer kept the rifle; it had been newly cleaned. The officers went to the ground where Scott had fallen, and found the places where the balls, which missed Scott, had gone into the ground. They dug up these balls. These balls and the rifle were placed in the hands of experts, who testified that the balls dug out of the ground were fired from the rifle.

Appellant earnestly insists that the court erred in admitting incompetent evidence. Sam Riley as a witness for the commonwealth was permitted to testify that Rice Short, a day or so before the killing, said to him while talking about Scott's cutting the tops, "I will tell you what you ought to do, you ought to take that pistol or shot gun in hand and kill the son-of-a-bitch, and get shed of him; there would be nothing done about it." And Riley said, "I wouldn't want to do that." Short then said: "I will tell you what you could do, you could get $250.00 out of this. There is a man behind it that has got the money. The old man is putting it out." Kim Crawford was known in the neighborhood as the "old man." The defendant objected to the evidence. The court ruled that it was not competent or to be considered against the defendant unless upon the whole case the commonwealth proved there was a conspiracy entered into between Rice Short and Kim Crawford to kill Scott.

If that was proved, it would be competent; otherwise, it would not. There was no exception to the ruling of the court.

Sam Riley also testified that this occurred between him and Porter Crawford on the day of the killing. Porter Crawford said, "Is Jesse Scott over there at your house this morning?" Riley said, "I don't know." Porter Crawford said, "I think he is, he went by there after you came back."

There was no objection to the testimony, and there was no motion made at any time to exclude the above testimony of these witnesses. So no complaint can be made here on this ground.

Porter Crawford, who was jointly indicted with appellant, was tried at a previous term of the court and found guilty. He appealed to this court, and the appeal was pending at the time of the trial. On cross-examination, over the objection of the defendant, he was asked if he had not been tried and convicted on the indictment and the case was then pending on appeal, and he answered, "yes, sir." The court then said to the jury:

"That evidence is only to be considered by you to effect the credibility of this man as a witness, if it does effect it, and should be considered by you for no other purpose." The defendant excepted.

This precise question was before the court in Foure v. Com., 214 Ky. 620, 283 S. W. 958, 962, and holding that the evidence was inadmissible, the court said:

"Gillis had been convicted a second time under this indictment and his appeal was pending at the time of this trial. He was introduced as a witness for defendant and on cross-examination was required to answer that he had been convicted of a felony, although it was shown that an appeal was then pending in his case. While in a proper case a witness may be impeached by asking him as to his being convicted for a felony, here this was error for two reasons: First.—The Code provisions (section 597, Civil Code), authorizing such impeachment, refers to a judgment of conviction, which of course means the final judgment. Ordinarily, this refers to the judgment of the circuit court, but an appeal in a criminal case suspends the judgment, and this

does not become final until a termination of the appeal. If the witness' case is reversed and on final trial he should be acquitted, it will not be contended that on a subsequent trial he could be impeached by showing such conviction, and during the pendency of the appeal it cannot be determined what the final judgment will be. Second.—The effect of this evidence was to show that another jury had found Gillis guilty of the same offense here charged, which was quite prejudicial to appellant's substantial rights."

By instruction 1 the court told the jury that if they believed from the evidence beyond a reasonable doubt that the defendant Kim Crawford and Porter Crawford, with malice aforethought, confederated together to kill Jesse Scott and Porter Crawford pursuant to the conspiracy, with malice aforethought killed him, they should find the defendant guilty. By the second instruction the court told the jury that although they believed from the evidence beyond a reasonable doubt that Porter Crawford killed Scott with malice aforethought, they should find the defendant Kim Crawford not guilty, unless they believed from the evidence beyond a reasonable doubt that Kim Crawford with malice aforethought conspired with Porter Crawford to kill Scott. These were the only two instructions under which a conviction could be had, and under neither of these instructions could the defendant be convicted, unless the jury believed from the evidence beyond a reasonable doubt that Porter Crawford had done the killing. But under such circumstances it was peculiarly prejudicial to the defendant to get before the jury the fact that Porter Crawford had been found guilty although an appeal was pending, and this evidence was used with telling effect in the argument of the case to the jury. Clearly this error was prejudicial to the substantial rights of the defendant and a new trial should be granted.

The bullets and the gun were sufficiently identified by the proof for the commonwealth and there was no error in admitting this evidence. The officer who got the gun entered the number of the gun on a record and the gun produced at the trial had the number on it. The officer who dug up the bullets put them in a box in his safe, took them and the gun to Bowling Green for the expert to examine them, and also took them from Bowling Green to Chicago to have them examined there by

an expert, but according to the testimony they were always in his possession. Appellant reserved exceptions to questions and answers of eight of the commonwealth's other witnesses. It is unnecessary to extend this opinion by setting all of this out. The court finds no substantial error in this matter.

It is earnestly insisted that there was no evidence of a conspiracy between Kim Crawford and Porter Crawford to kill Scott, and that the evidence as to what Porter had said not in the presence of Kim Crawford should have been excluded, and that instructions 1 and 2 should not have been given. But there was evidence that early that morning Porter Crawford came along with his wife and others in a car; he got out and they went on; also that about 9 o'clock, or an hour before Scott was killed, Porter Crawford had in his hand a gun about a quarter of a mile from where Scott was killed; asked as to Scott's whereabouts, and added, "He won't be there after you come on back." Between 12 and 1 o'clock he was seen going through the field towards Kim Crawford's house with "a stick, gun or a piece of iron or something in his hand"; another witness says he was not walking with it or using it as a stick, that it glistened in the sun, and this attracted her attention.

A conspiracy to kill another can rarely be proved otherwise than by circumstances and the declaration of the parties. There was a bitter state of feeling on the part of the Crawfords toward Scott. A raid conducted by Scott was anticipated to be made the next day. The circumstances were sufficient to show that Scott had been killed with Kim Crawford's rifle and that it had been cleaned up to conceal the fact that it had been so used. Porter Crawford was seen with a gun early that morning and then announced that Scott would not be there when the witness returned. Kim Crawford made like statements. All this with the situation and conduct of the parties was sufficient to submit the question of conspiracy to the jury.

The question of the competency of the experts was considered by the court on the appeal of Porter Crawford. The judgment there was reversed on other grounds, but this objection was not sustained. Crawford v. Com., 242 Ky. 458, 45 S. W. (2d) 824.

The evidence here is sufficient to show that in their minds the two Crawfords were contemplating the death

of the deceased. This appears from their statements and appellant's subsequent attitude tending to establish this fact; and that they were acting in concert with this purpose in view is more clearly presented by the evidence here than it was in that case. The rule is that if there is any evidence the question is for the jury. If all the facts shown here had been shown in that case, a different result might have been reached. Though Bethel Scott stated that he could not be certain whether it was Porter Crawford or Sam Riley or John O. Scott who did the shooting, there was later proof that Riley and Scott were then elsewhere, and that Porter Crawford was seen with a gun near there inquiring as to where Scott was, and asserting that Scott would not be there when the witness returned. These statements of Porter Crawford were not shown by the evidence in his case.

On another trial the court will instruct the jury on the weight to be given the testimony of an accomplice as provided by section 241 of the Criminal Code of Practice.

Judgment reversed, and cause remanded for a new trial.