## Hotchkiss v. Commonwealth.

(Decided May 1, 1934.)

HARRY L. MOORE and D. I. DAY for appellant.
BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

E. L. Hotchkiss appeals from a judgment convicting him of manslaughter and fixing his punishment at 10 years' imprisonment.

Complaint is made of the admission of certain evidence, but as appellant did not object to, or move to exclude, the evidence, the error, if any, is not available on appeal. Crawford v. Commonwealth, 242 Ky. 458, 46 S. W. (2d) 762.

The insistence that the verdict is not sustained by the evidence requires a statement of the facts. Appellant operates a sawmill and lives on a tract of land on Cowan creek in Letcher county. The deceased, Tom

Day, lived on a farm about a quarter of a mile away, and was engaged in raising live stock, principally hogs. The Hotchkiss place was uninclosed, and hogs belonging to the deceased would go on the place and do damage around the residence. When this occurred, appellant and his son, Stanley, would run the hogs off toward the home of the deceased. Because of this situation there was feeling between the parties. On the morning of the homicide it was agreed between the deceased and his son, Paschal, who was working on a gate, that the deceased would go and look for a hog, and that Paschal would join him later on. The deceased was armed with a pistol, and Paschal, who overtook him, was armed with a shotgun. At that time Stanley Hotchkiss was driving the hogs and appellant was following him with his rifle in his hand. From that time on, there is a sharp conflict in the evidence. According to Paschal he asked Stanley why he was abusing the hogs, and Stanely replied that it was none of his God damn business. Paschal had his shotgun in his hand, and appellant threw his gun on him and told him to drop his shotgun or he would kill him. At that Paschal and his father both ran behind a shack, and appellant fired two shots at his father and then shot at him. Paschal then returned the fire with his shotgun, and his father fired three shots at appellant with his pistol. His father then ran out of cartridges and broke and ran. As his father was running away, appellant took good aim at him and fired two shots. His father threw his hands to his hip and said, "Oh, Lord, have mercy on me." Paschal than ran in a different direction and appellant fired three shots at him striking him twice, but the wounds were not serious. Ervin Day, who claims to have been present, but about sixty yards away, saw appellant and Stanley coming down the road driving the hogs, and appellant said to Paschal, "Drop that gun." About the same time appellant shot twice. After that the shotgun went off behind the shack and the deceased came out and shot three times with a pistol. Then the deceased ran down the road and appellant shot at him twice. When the last shot was fired, the deceased put his hand on his back and said, "Oh, Lord have mercy," or something like that. The deceased was about thirty steps away and running pretty fast. After that appellant shot three times at Paschal.

According to appellant, the deceased and his son,

Paschal, had both worked for him. Tom Day's hogs were on his place and he was driving them down the creek. He saw Tom Day and some discussion arose between them as to the hogs, Tom claiming that he did not have any right to drive the hogs off. Tom told him that if he drove the hogs down he would shoot him. He told Tom he could do as he pleased about that, and then turned and went back to the mill. A few minutes later his wife came out on the porch and said, "Stanley, look out, for Tom is down there with a gun." Appellant looked and saw Stanley driving the pigs down. He then returned to his home and got his .22-caliber gun and went down to where Stanley was. Appellant then saw Paschal with his gun drawn on Stanley. Appellant said, "Drop those guns," and Paschal took one step and fired. When he told Paschal to drop the gun, Paschal had his gun drawn to his shoulder, and pointed right at him and Stanley. Tom then fired from a corner and Paschal loaded and fired again. Tom then fired for the second time. Paschal fired again and Tom jumped back behind the building. Tom came out and fired again, and then he fired at Tom. The last time Tom ran out in the road, wheeled and shot again, and then appellant shot. At the time appellant did not think he had hit either one of them. The first time appellant fired was after Tom had fired at him. Stanley Hotchkiss testified that the pigs had come up to the house, and had been doing damage around the house and garden. He was driving them down past the lumber stacks. Paschal Day was lying on the ground beside a pine tree and said, "Where are you going with them pigs?" He replied, "I am driving them down the line." Paschal said, "Turn around and go back" and raised his pistol and fired. There had been three shots, and then the pistol repeated. At that time his father started shooting with his .22. Four shots had been fired before his father fired, two from a pistol and two from a shotgun. He did not see his father fire, but heard the shots.

Analyzing the evidence the case comes to this: On the one hand we have the evidence of appellant and his son that Paschal Day and his father were the aggressors, in that Paschal drew the gun on Stanley and his father fired the first shot. On the other hand we have the evidence of Paschal and Ervin Day that appellant began the difficulty by firing the first shot, and that he

shot deceased in the hip while he was running away. We cannot reverse unless the verdict is flagrantly against the evidence, and where, as here, the evidence for the commonwealth is about equal in weight to the evidence of the defense, it is at once apparent that no such case is presented.

Lastly it is insisted that appellant was entitled to a new trial because of newly discovered evidence. In support of his motion he files his own affidavit and the affidavits of Dock Shepherd, Hobard McClure, and Velda Combs. The affidavit of Dock Shepherd is to the effect that he had a conversation with Ervin Day, witness for the commonwealth, in which Ervin Day stated that he and his brother, Melvin, were up in the woods when he heard the shots, and he said to Melvin, "There is something wrong." The affidavit of McClure is to the effect that he was with Ervin Day at the time of the shooting and heard the shots, but that Ervin Day was not in a position to see the difficulty. The affidavit of Velda Combs is to the effect that in a conversation with Canna Day, the wife of the deceased, Canna stated that the deceased did not speak before he died. Ordinarily, a new trial will not be granted on account of newly discovered evidence that tends to impeach or contradict a witness who testified on the trial, Ellis v. Commonwealth, 146 Ky. 715, 143 S. W. 425; Colson v. Commonwealth, 200 Ky. 402, 255 S. W. 60, and the evidence relied on is not such as to justify an exception to the rule.

On the whole, we find no error in the record prejudicial to appellant's substantial rights.

Judgment affirmed.