## Mercer v. Commonwealth.

(Decided Feb. 5, 1935.)

L. Y. McCARTY for appellant.

BAILEY P. WOOTTON, Attorney General, RAY L. MURPHY, Assistant Attorney General, and G. MURRAY SMITH for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant, Stanley Mercer, and Neal Bowman were jointly indicted by the grand jury of Jessamine county for the murder of George Kaufman. Separate trials were awarded, and the commonwealth elected to first try Mercer. He was convicted and his punishment fixed at death. Motion and grounds for a new trial were duly filed and overruled. He appeals. His alleged grounds for a new trial are as follows:

"One: Upon the ground that the defendant has discovered new, important and material evidence in his favor after the final submission of the case to the Jury, which evidence he did not discover until after the submission of the case to the Jury and did not know and could not discover by any reasonable diligence before the trial and character and nature of said evidece; that due to the conditions and feeling in the community in which he has been tried he has been unable to secure an affidavit setting out this evidence and said feeling and prejudice would in his opinion make it impossible to procure this evidence except that the party be brought into Court to testify to the same.

"Two: Upon the ground that the verdict of the Jury is against the law and not supported by the evidence."

We will first dispose of ground 2 relating to the evidence.

The deceased, George Kaufman, and his brother, W. T. Kaufman, were engaged in the mercantile business at Camp Nelson in Jessamine county. It is disclosed by the evidence of W. T. Kaufman that at about 8 o'clock March 8, 1934, while he and his brother were alone in the store, a car drove up in front of the store and stopped; two men got out of the car and walked into the store, and W. T. Kaufman approached them and asked them what they would have, and they said, "A package of Camels." Kaufman got the cigarettes for them, and they gave him 50 cents. He then walked back to the cash register and gave them the change and closed the cash register drawer, and, as he looked up, Mercer said: "Stick 'em up." He looked around, and did not see any gun, but in an instant Mercer drew his gun, and Kaufman said, "Don't shoot," and dodged under the counter. Mercer stuck the gun over the cheese case and held it there. Kaufman grabbed the gun with his left hand and said, "Let it loose." While he was grappling with Mercer for the gun, Bowman said, "Shoot," and Mercer shot W. T. Kaufman through the arm and turned and shot the deceased, George Kaufman, and he died within a few minutes. Mercer then shot through the floor, and he and Bowman then left the store and got into the car and left.

Dessie Hall, who lived in Wayne county, testified that Mercer and Neal Bowman came to her home at about 4 o'clock on the morning after the shooting, and in a conversation with them they said they had a "shooting scrape" the night before at Camp Nelson. She said Bowman first told her about the shooting in the presence of Mercer and she said to Mercer, "You know you didn't," and he sail, "Yes, I did." Two or three days after that time she and her sister, Maggie Meadows, in company with Mercer and Bowman, went in a car to Burgin in Mercer county to get the mail, and they received through the mail a newspaper giving an account of the killing of George Kaufman, and Bowman said to Mercer, "You killed him." Mercer made no response to that statement.

Maggie Meadows testified that Mercer and Bowman came to her home at the same place referred to by her sister, Dessie Hall, but she did not hear the conversation between them and Miss Hall. But about three days after that time she had a conversation with Mercer in which she asked him what he was worrying about, and he first refused to tell her, and said, "If he told me I would worry too," and she said, "I already know," and he asked her who had told her, and she proceeded to tell him what Dessie Hall had told her, and he then said it was all true. She was asked: "Q. Now what did you tell him? A. I told him Dessie told me that him and 'Slim' [meaning Bowman] went into a place and he shot two fellows and he said it was so." She said that, in a conversation with Mercer the day after the shooting at Camp Nelson, he told her he had lost his cap. She said she knew the cap that he had been wearing referred to by him as the one he had lost. A cap was presented to her, and she recognized it as being the cap she had seen Mercer wearing before the shooting.

John Combs, sheriff of Jessamine county, testified that he found the cap lying on the floor of Kaufman's store when he arrived there pursuant to a call soon after the shooting. Mercer was arrested several days after the shooting and taken to the Frankfort penitentiary for safe-keeping. While he was there the witnesses W. T. Kaufman and Sheriff Combs went to Frankfort and talked with him, and the sheriff asked him if he ever saw Kaufman and he said, "Yes, he is the man I shot at Camp Nelson." The above is about the substance of the evidence produced for the commonwealth, and it will be readily seen that it is amply sufficient to sustain the verdict.

Mercer, testifying in his own behalf, admitted going to the store with Bowman as related by Kaufman, but denied that he went there with any intent of robbery, and did not know that Bowman intended to commit robbery. He stated that it was Bowman who presented the pistol on W. T. Kaufman, and, while Bowman and Kaufman were grappling for the pistol, Bowman commanded him to shoot, and he then shot Kaufman in the arm and ran out of the store. He said as he was going out he heard two or three other shots fired. He denied shooting George Kaufman or that he saw him or any one in the store except W. T. Kaufman. He ad-

mitted going to Wayne county to the home of the witnesses Meadows and Hall, on the night of the shooting, but denied all statements about the shooting as detailed by Mrs. Meadows and Miss Hall. He assigned as reason for shooting W. T. Kaufman that he was afraid not to do so when Bowman commanded him to shoot. He said that Bowman had often told him that he would kill him if he ever "sqawked" on him. He said that Bowman came to the community where he lived in Wayne county about January 10, 1934, and asked him to do a little "running around" with him. He freely admitted that he and Bowman had been in the holdup business since he had met Bowman. He detailed time and places of robbery by himself and Bowman between January 10 and the time they were arrested about March 30, 1934.

It is argued that it was improper for the commonwealth's attorney to ask the accused about other offenses not connected with the offense for which he was on trial; but it is not necessary for us to pass on the propriety of this evidence, because it was not objected to at the time nor any motion made to exclude it, Crawford v. Com., 242 Ky. 458, 46 S. W. (2d) 762; Strassell v. Com., 4 Ky. Law Rep. 618, 11 Ky. Op. 886; Drake v. Com., 49 Ky. (10 B. Mon.) 225, and for the further reason that it is not made a ground for a new trial, section 274, Criminal Code of Practice; Bowling v. Com., 230 Ky. 387, 19 S. W. (2d) 1086. There is also a complaint respecting the court's ruling on other evidence, to some of which objections and exceptions were interposed, but this is not offered as ground for a new trial. But in fairness to counsel we may say that upon examination of the evidence complained of, to which there were objections and exceptions, we conclude that there was no reversible error, even though this complaint had been made a ground for a new trial.

With respect to ground 1 for a new trial based on newly discovered evidence, it is not accompanied with any affidavit of the accused or the newly discovered witnesses setting out the alleged newly discovered evidence. It is conceded that a motion for a new trial based on newly discovered evidence should be accompanied by such affidavits, but counsel for appellant attempts to excuse the absence of such affidavits on the ground that, due to the feeling and prejudice in the community at that time, the witnesses would have testified

only when brought into court. Conceding, without deciding, that this was true, yet, if the accused had discovered such evidence, he could have set out by his own affidavit the nature of such evidence and other relative facts with respect thereto, and a failure to do so is at least persuasive that he had not discovered such evidence. In the absence of such affidavit, his motion is fatally defective. Pierce v. Com., 214 Ky. 454, 283 S. W. 418; Powell v. Com., 149 Ky. 433, 149 S. W. 891; Crouch v. Com., 172 Ky. 463, 189 S. W. 698.

It is insisted that the fact that the accused was unable to employ counsel and was represented by appointed counsel is of much importance in determining the question of a fair trial. This may be true, but this rule does not mean that the courts will reverse a conviction where the accused is represented by appointed counsel unless the record discloses some error at least reasonably apparent. So far as the record discloses appellant was ably represented by his appointed counsel as he would have been had he employed counsel of his own choosing. In the circumstances, we cannot conceive that anything more could have been done. The evidence is simple, clear, and to the point, and strongly points to his guilt. The accused is only 18 years old, and the extreme penalty has been imposed, and, naturally one would be prompted by human sympathy, as well as a desire to do justice, to give his cause careful consideration, and, if any reversible error were reasonably apparent, it should and would be determined in favor of the accused. But upon a careful examination of the record we find no reversible error.

The judgment is affirmed.

The whole court sitting.