## Bryant v. Commonwealth.

(Decided Feb. 18, 1938.)

WILLIAMS & ALLEN for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Eldon Bryant appeals from a judgment convicting him of manslaughter and fixing his punishment at fifteen years' imprisonment.

The indictment on which this trial and conviction were had was returned by the grand jury at the July, 1937, term of the Breathitt circuit court, wherein Bryant was charged with the willful murder of Herman Gross, by shooting and killing him.

It is shown by the evidence that this homicide occurred about dark on the evening of May 3, 1937, at Highland College in Breathitt county, Ky., where the school's commencement exercises were then being held

The evidence portraying the facts and circumstances leading up to the commission of the offense here in evidence and under which it was committed is, briefly stated, that at about 7 o'clock on this evening and occasion in evidence, a crowd had assembled and was gathering at the schoolhouse for the school's commencement exercises to be held there. With this crowd came also the appellant, Eldon Bryant, and the deceased, Herman Gross, who were soon to become the actors in a tragic killing staged at the very threshold of the school.

Further, it is shown that preliminary to the opening of the exercises and just before the trouble occurred between the accused and the deceased, Herman Gross, the appellant, Eldon Bryant, went up the steps, onto

the front porch of the school building, where he met a number of people and acquaintances, among them the deceased, standing around, to whom he spoke, when it is testified the deceased, announcing that he was drunk, returned the greeting by slapping appellant off the porch to the ground as he cursed him, and further threw a stick at Bryant as he got up and ran around the corner of the building to his home. There, finding that the white coat he wore had been soiled with trash and dirt when he was knocked off the porch to the ground, he changed it for a blue one and soon returned to the school building.

Further, the testimony of the witnesses, from this point of the trouble and leading on to the homicide, becomes conflicting and is that appellant, after returning to the school, went into the auditorium, where the exercises were to be held, and remained there but for a minute or two, when he left and again went out on the porch, drawing his gun as he went, when the deceased, seeing him coming, immediately left the window where he had been standing, looking into the auditorium, and going up to appellant "made a glom at his gun" and began to grapple and wrestle with him for it, when, in the struggle, they backed off the porch and fell to the ground, where, all the witnesses testify, the appellant then fired his gun three or four times into the deceased, almost instantly killing him.

The evidence shows that both the appellant and deceased were at the time of their trouble young men, in their early twenties; also, that the deceased was a large, strong and heavy man, weighing about 180 pounds, while the appellant was of slight build and strength, weighing only some 115 pounds and in no sense an even match for the stronger, heavier Gross in any physical struggle or combat.

The appellant, testifying in his own defense, states that when he and the deceased, in their struggling, fell from the porch and onto the ground, the deceased fell or got on top of him and was threatening to kill him, and that it was because of his belief and fear that he would so so, that, when he could, he drew his gun and shot Gross to death to save his own life.

On the other hand, the testimony given by the witnesses for the Commonwealth is contradictory of the appellant's version of the circumstances of the homicide,

and is that the appellant went into the auditorium, but that, on his seeing deceased standing outside on the porch, looking in through the window, he started from the auditorium for the porch, at the time saying to Mr. Zeke Jett, with whom he was then talking, that he was going to kill the "g. d. s. o. b. " and as he went out, he drew his gun and, on approaching the deceased, "threw it" on him, when the deceased began to wrestle and struggle with him for its possession; that while thus struggling, they fell from off the porch to the ground, the appellant on top of him, when he shot and killed the deceased.

We deem this summary to be a sufficient statement of the facts in evidence, especially when the appellant is making no contention that the evidence was insufficient to support the jury's verdict returned against him; nor is he insisting that its verdict was palpably and flagrantly against the evidence.

The one contention here strenuously urged and argued by counsel for appellant is that the court committed so flagrant an error and one so prejudicial to appellant's substantial rights as, in its effect, to have practically denied him a fair trial, by reason of its most improperly overruling his motion made to set aside the swearing of the jury and continue the case, or at least pass the hearing or postpone the trial of it, until the presence of Zeke Jett, as a defense witness, could be had to impeach the credibility of the false testimony of the Commonwealth's witness, Lewis, which it is contended, very strongly influenced the jury's verdict. Inasmuch as the appellant is insisting upon the controlling importance of this objection or as the one ground upon which the judgment should be reversed and a new trial granted him, we deem it expedient to briefly state the evidence of this witness, to which this objection is directed because of its claimed impressive and prejudicial character and by which, as the defendant alleges, he was taken by surprise, which rendered it necessary to impeach its credibility by the testimony of the witness, Jett, who would have testified, if present, that no such statements or conversation, as alleged testified by Lewis, were made to or had by appellant with Jett upon this occasion, or at all.

An examination of the record shows that this adverse testimony, so hostilely and, it is claimed, so false-

ly given by Lewis in his account of the fact and circumstances of appellant's killing of the deceased and which was so damaging and prejudicial to appellant in its effect upon the jury, was to the effect that appellant, even before the struggle and trouble began between him and the deceased out on the porch, had fired his first shot at the deceased. Also, Lewis was the only one who testified as to many previous threats having been made to him by the appellant against the deceased, to the effect that he was going to kill him, and he further testified that appellant said to Zeke Jett, while standing at the door of the school auditorium, immediately before going out onto the porch and starting the trouble with and shooting at the deceased, "I will kill the g. d. s. o. b. right now."

The appellant's contention and complaint is that the court erred in overruling his motion made, when this testimony was given, to set aside the swearing of the jury and continue the case, because of his having been taken by surprise by the giving of this testimony by Lewis, which was decidedly different from what Lewis had stated, upon his examination made of him (granted by the court), he would testify. This contention and complaint of appellant is thus stated in his bill of exceptions.

"The defendant had a subpœna issued for Zeke Jett, a prominent merchant and substantial citizen of the community where this trouble occurred and the said Jett was present in court on the day this case was set for trial, but the case having been passed to another day the said Jett was not present when it was called for trial, because of illness in his family, and the defendant announced that he was not ready for trial without the presence of said witness, whereupon the Commonwealth's Attorney stated that the commonwealth had had a subpœna issued for the said Jett and the court then announced that the trial should proceed with the understanding and assurance that the said Jett would appear and testify before the trial was concluded.

"During the course of the trial and when one Willard Lewis was called as witness for the Commonwealth the attorneys for the defendant asked permission to talk with the witness before he testified and the court granted this request, but on be-

ing taken into the room the witness refused to make any statement concerning the case and persisted in this until the court finally admonished him to tell the attorneys for defendant what he knew about the case; the witness then disclosed to said attorneys what he intended to testify to concerning what took place at the time of the trouble and stated to said attorneys that that was all he knew about the case; he was then called to the witness chair, when he stated, among other things that he heard the defendant immediately before the shooting say to Zeke Jett, 'I will kill the G. D. S. O. B. right now.' The defendant then moved the court to set aside the swearing of the jury and continue the case or at least to postpone further proceedings until the presence of Zeke Jett, who was then at his home some eight miles from Jackson, could be had, but the court overruled defendant's motion and proceeded with the trial of the case and concluded the hearing of same without the presence of Zeke Jett, to which action of the court the defendant objected and excepted at the time and still excepts.''

Appellant's objection to this ruling and action of the court, complained of as reversibly erroneous, was set out as ground 7 in appellant's motion and grounds for a new trial, supported by Zeke Jett's affidavit, in which he averred that he, Jett, had heard no such threats made by the appellant and testified to by the witness Lewis as having been overheard by him, and that the testimony of Lewis was not true on that point.

It is shown by the record that the witness, Willard Lewis, represented as having been the star witness of the Commonwealth against appellant in giving this alleged false and damaging testimony, was impeached by several witnesses, and his testimony was also strongly and expressly denied by appellant, in that he testified he had made no such statements or threat against the deceased to Mr. Jett, as was testified by Lewis, and had never made any threat at all against deceased.

Looking now to the merit of this contention, it may be stated that it is a well-settled and general rule of law in this state that ''a new trial will ordinarily not be granted solely on the ground of newly discovered evidence to impeach the witness of the successful party,

yet there are many cases where it was held that, as under circumstances like those here present the impeachment of the witness, if believed by the jury, would probably have a controlling effect on its verdict, it was error for the court not to grant a new trial on the ground of newly discovered evidence that would impeach the witness.'' Elkins v. Com., 245 Ky. 199, 53 S. W. (2d) 358, 359; Hensley v. Com., 241 Ky. 367, 43 S. W. (2d) 996; Brewer v. Com., 228 Ky. 128, 14 S. W. (2d) 375.

While we do not understand the action of the trial court here followed upon the trial, in the light of its assurance given the defendant, when overruling his motion made for a continuance, timely urged, on the ground that he was not ready for trial without the presence of his witness, Mr. Jett, that the said Jett would appear and testify before the trial was concluded in seemingly forgetting such assurance given appellant's counsel and permitting the trial to conclude without having Jett appear in court to testify or without permitting the appellant to at least put before the jury Jett's affidavit, to be read as his testimony, impeaching the witness Lewis, to the effect that such statements or threats had not been made to him by appellant within Lewis' hearing or at all, and that the testimony of Lewis so stating was untrue.

However, the record is silent as to counsel for appellant having further tried to present in such way, or any way, to the jury Jett's claimed impeaching testimony of Lewis, tending to destroy his credibility. Clearly the duty continued to rest upon counsel, throughout every stage of his client's trial, to persist in his efforts, renewed upon his own initiative, to have submitted to the jury all available evidence deemed to be of material influence in his proper defense.

In the case of Bowling v. Com., 230 Ky. 387, 19 S. W. (2d) 1086, 1088, which is strikingly similar, in its facts and the question presented, to the case here before us, the court said:

"After the trial was over, the affidavit of Dewey Hager was filed, in which he stated that he was with Shelby Hardy about the time of the shooting or soon thereafter, and that Hardy had said nothing to him about it. It is urged that this evidence was

important. The rule is that a new trial will not be granted for newly discovered evidence, unless it is of such unerring character that it would probably work a change in the result of the trial. The most that could be said for this evidence is that it would affect the credibility of the witness Hardy. A new trial will not be granted to allow impeaching testimony of the character here involved. * * * We are not impressed that the testimony of Dewey Hager would have had any material influence upon the trial, if produced, and it is not of the decisive character that will authorize the granting of a new trial.''

In the instant case, as in the Bowling Case, the testimony of the newly discovered witness had to do with the conversation had with appellant and by it he would have denied that appellant made the threat in that conversation testified to by Lewis.

The newly discovered testimony of Mr. Jett, which it is clear could only serve to contradict or impeach the witness, Lewis, who (as stated, supra) was already contradicted and impeached by both the appellant and several of his witnesses, could, under such circumstances, hardly be regarded as testimony of such unerring character and effectiveness as would probably work a change in the result of the trial.

We are, therefore, despite the trial court's having apparently overlooked its assurance given the appellant that Jett would appear and testify before the trial was concluded, of the opinion that appellant has not shown himself either to have been injured or prejudiced by the court's overruling his motion for a continuance or through its later failure to submit the impeaching evidence of Jett, as same, under the circumstances shown, could have only been cumulative and corroborative of other contradictory and impeaching testimony given by the appellant and other witnesses, tending to destroy the credibility and force of Lewis' testimony.

We are, therefore, influenced by the applicable principles declared in the cases, supra, led to conclude that the trial court did not prejudicially err in overruling the appellant's motion for a new trial upon this ground

alleged, and that, in so doing, it acted well within the general rule as declared in Elkins Case, supra, and again in Hotchkiss v. Com., 254 Ky. 110, 71 S. W. (2d) 23, 24, that "ordinarily, a new trial will not be granted on account of newly discovered evidence that tends to impeach or contradict a witness who testified on the trial." See, also, Ellis v. Com., 146 Ky. 715, 143 S. W. 425; Colson v. Com., 200 Ky. 402, 255 S. W. 60.

This rule and exception thereto, equally well established, is thus stated in Lassiter v. Com., 249 Ky. 352, 60 S. W. (2d) 937, 939:

> "Newly discovered evidence of such character [impeaching and collateral] is not sufficient to authorize the granting of a new trial unless it impeaches *the only material witness* in the case. Bates v. Com., 226 Ky. 318, 10 S. W. (2d) 1099; Jones v. Com., 238 Ky. 453, 38 S. W. (2d) 251. Where newly discovered evidence that is only impeaching in its nature affects the evidence of the sole witness upon whose testimony the conviction was necessarily had, or when the newly discovered evidence is of such a nature that unexplained it probably would have induced the jury to reach a different conclusion, a new trial will be granted." (Italics ours.)

Further, it is to be remembered that the appellant, having here admitted the shooting and killing of Gross, thereby assumed the burden of justifying it or excusing his act by evidence proving that it was done in his self-defense. He having here failed to produce such evidence, tending to disprove the Commonwealth's version of the killing, the case was clearly one for the jury to decide.

To such effect was this rule announced in Compton v. Commonwealth, 266 Ky. 803, 100 S. W. (2d) 813, 815, as follows:

> "Where one admits the shooting and killing of another and undertakes to justify it and there is evidence tending to disprove the defendant's story, the case is for the jury to decide. Jackson v. Com., 248 Ky. 47, 58 S. W. (2d) 263. The fact that the defendant killed a man, accompanied by evidence that the deceased was not armed and other circum-

stances refuting the claim of self-defense, not only authorized the submission of the case to the jury, but sustains the verdict. Bourne v. Commonwealth, 234 Ky. 842, 29 S. W. (2d) 561.''

See, also, Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732.

On the whole, we find no error in the record substantially prejudicial to appellant's rights, and therefore the judgment is affirmed.