## Baisden v. Commonwealth

(Decided Feb. 22, 1938.)

J. B. CLARK, EARLE CASSADY, and J. H. PREECE for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Under an indictment charging Mart Branham, Jimmy Muncy, and Mary Baisden with the murder of Lucile Branham, the latter on separate trial has been found guilty of voluntary manslaughter and her punishment fixed at imprisonment for 10 years. She is appealing.

The indictment first charges, in substance, that the defendants, in circumstances that would constitute murder, shot at Edith Branham, but that the shot missed her and struck and killed Lucile Branham. In the second count the indictment charges that Mart Branham fired the shot as set out in the first count, and that the other defendants aided and abetted him in so doing. In a third count it is charged that the shooting and killing was done pursuant to and in furtherance of a conspiracy theretofore entered into by the defendants and which existed at the time to murder Edith Branham. In a fourth count it is charged that defendants shot at Edith Branham with intent to kill her in circumstances that would have constituted murder if she had been killed, but that the shot missed her and killed Lucile Branham.

It appears in evidence that Mart Branham and Edith Branham are husband and wife, and Lucile Branham was their child. They also had other children. The Branham family lived on the west side of Rockcastle creek and a county road that ran nearby. Appellant lived about half a mile up the creek on the opposite side, and Jimmy Muncy lived or spent a good portion of his time at her home. An undue intimacy had existed between Mart Branham and Mary Baisden for something like two years, and this had caused trouble between Branham and his wife which sometimes reached the point of fights and brawls. On the afternoon of the unfortunate tragedy, appellant, Muncy, Mart Branham, and his grown son, L. K. Branham, and others had been to a post office about a mile up the creek

from the home of Mary Baisden, and later, as testified to by a number of witnesses, appellant and Mart Branham were seen standing in the road engaged in conversation for quite awhile. None of the witnesses, except Mart Branham, who was finally introduced by the Commonwealth, attempted to detail or relate anything that was said during this conversation. There was evidence that Branham and appellant were often seen together at various places, including, possibly, her home, but this was about the substance of all the evidence, except that of Mart Branham, as bearing on the question of conspiracy or any participation of appellant in the killing of the child. When called as a witness for the Commonwealth, Mart Branham testified at length concerning the illicit relation between himself and appellant and the trouble that it had caused between him and his wife. He also admitted that he and appellant were in conversation as related by other witnesses as he returned from the post office on the afternoon of the killing; that he made arrangements with appellant to visit her at her home that night, and that in the course of the conversation she told him that his son or his wife or possibly both had purchased some shotgun shells at a store and that he should be on his guard lest they do him some harm; that he told her he had nothing with which to protect himself and she gave him her pistol and told him to defend himself and not to let them hurt him. Appellant was never at or near the Branham home on the afternoon of the killing, and after leaving the post office and store went on to her home. After Mart Branham returned to his home he asked his son why or for what purpose he had purchased the shotgun shells, and an argument ensued which led to a vigorous fight between them in which each was striking the other with fists. The fight continued with unabated fury until Edith Branham finally took off her shoe and struck her husband over the eye cutting a long gash. She and her son testified that he thereupon drew his pistol and fired at her, but the shot missed her and struck and killed the child. He testified that when his wife joined her son in the attack upon him he drew his pistol, attempted to fire into the floor with a purpose to cause them to desist, and that the shot accidentally struck Lucile. While he testified that he and appellant had discussed the trouble between him and his wife and that she had suggested that if he would get a divorce she

would marry him, he was positive in his statements that she did not on the afternoon of the tragedy, when they were seen in conversation, or at any other time, ever advise, suggest, or intimate that he should kill or do any violence to his wife. It is not even contended that appellant was present or near when the shooting took place.

It is an established doctrine that, to constitute an aider or abettor, there must be (1) a participation in the crime and (2) presence, actual or constructive, at the time of its commission; and to be constructively present as an aider or abettor one must be "in such contiguity as to enable him actually to render aid" in the commission of the crime. See Biggs v. Commonwealth, 196 Ky. 655, 245 S. W. 292.

It will therefore be seen that under the evidence appellant could not be convicted as an aider or abettor, and that if the conviction be sustained it must be under the conspiracy charge.

The principal ground relied on for reversal is that there is no evidence conducing to establish a conspiracy, and therefore the court erred in not sustaining her motion for a peremptory instruction. The conclusion of the court concerning this ground renders it unnecessary to consider or discuss any other.

After about 14 witnesses had been introduced, the Commonwealth announced that it would rest, and thereupon counsel for appellant and for Jimmy Muncy, who was also on trial, moved the court to peremptorily instruct the jury to find the defendants not guilty. Apparently realizing the utter absence of evidence to connect defendants with the actual commission of or participation in the crime, the Commonwealth, over objections of defendants, was permitted to call Mart Branham, as a witness in an attempt to make out a case. Apart from the evidence of improper relations and conduct between appellant and Mart Branham, from which inferences of motive might arise, there is nothing in the evidence, except the fact that appellant gave Mart Branham her pistol, on which to rest a conviction under the conspiracy charge. While Mart Branham, the witness upon whom the Commonwealth is forced to rely, apparently did not attempt to spare or shield himself or appellant in any particular, but testified fully and frankly concerning the shameful rela-

tion between them, neither he nor any other witness testified to a word, suggestion, or intimation of an agreement or understanding between the parties to murder or to do any violence to Mrs. Branham.

The Attorney General and his assistant who are vigilant in the prosecution of offenders tacitly at least admit in their brief on behalf of the Commonwealth the failure of the evidence to sustain a charge of conspiracy. As indicated in Crawford v. Commonwealth, 242 Ky. 80, 45 S. W. (2d) 824, the fact that one who is jointly indicted with a party who committed a crime and in common with him may have had a motive for its commission is not sufficient to establish a conspiracy, nor is motive coupled with mere suspicion and evidence of mere relation or association between the parties sufficient to show conspiracy. Lockhard v. Commonwealth, 193 Ky. 619, 237 S. W. 26; Pharris v. Commonwealth, 198 Ky. 51, 248 S. W. 230; Anderson v. Commonwealth, 196 Ky. 30, 244 S. W. 315; Pace v. Commonwealth, 170 Ky. 560, 186 S. W. 142. The illicit relation between appellant and Mart Branham, and their utter disregard of moral and social standards and the sanctity of the home, is reprehensible indeed and not to be condoned by any right-thinking person; however, appellant was not on trial for her moral laxities in that respect. Manifestly, it was difficult for the jury in a consideration of the evidence bearing on appellant's guilt of the crime charged to divorce their minds from a consideration of the improper conduct and relation between the real offender and his paramour. From the evidence as a whole there is no escape from the conclusion that there is nothing of relevant and probative character on which to rest or sustain a conviction of conspiracy, and we conclude, as the Attorney General must have, that evidence of the liaison between appellant and Mart Branham and not any evidence tending to show guilt of the charge in the indictment brought about her conviction.

At the close of all the evidence the court peremptorily instructed the jury to find Jimmy Muncy not guilty, and it follows from what we have already said that the motion for a similar instruction in favor of appellant should also have been sustained.

Judgment reversed for a new trial and proceedings consistent with this opinion.